UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

JANE DOE, on behalf of herself and those similarly situated,

*Plaintiff/Appellee,*

v.

CENTERVILLE CLINICS INC.,

*Defendant/Appellant.*

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 2:23-cv-01107

---

OPPOSITION TO APPELLANT'S MOTION TO STAY REMAND ORDER
PENDING APPEAL

---

J. Gerard Stranch, IV
Michael C. Iadevaia
Stranch, Jennings, & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN  37203
Telephone: (615) 254-8801

Lynn A. Toops
Cohen & Malad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 636-6481

*Attorneys for Appellees*

# I. **INTRODUCTION**

This case is about Defendant-Appellant Centerville's surreptitious transmission of Plaintiff-Appellant Jane Doe's ("Doe or "Plaintiff-Appellee") and putative class members' personal data to third parties, like Facebook and Google, through a hidden tool embedded on its website. Plaintiff-Appellee brought state-law claims in state court, and Centerville removed the matter pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442. At issue on appeal is the propriety of Centerville's removal. Centerville seeks a stay of the district court's order effecting the remand to state court.

The basis for Centerville's requested stay is as thin as a playing card. First, Centerville has no likelihood of success in showing that its removal was proper. Centerville removed on two separate bases: 42 U.S.C. § 233 ("§ 233"), and 28 U.S.C. § 1442 ("§ 1442"). Both Centerville's grounds for removal hinge on its status as a United States Public Health Service ("PHS") employee under § 233, which concomitantly implicates removal under § 233(*l*)(2). Centerville's removal under § 233(*l*)(2), however, flagrantly ignores statutory command. Answering Centerville's call for protection under § 233—which sets a claim against the United States under the Federal Tort Claims Act as the exclusive remedy for damages against a PHS employee acting within the scope of its employment—the U.S. Government entered an appearance in the state court action within 15 days, as

required under the statute. 42 U.S.C. § 233(*l*)(1). The Attorney General explained it needed time to assess the matter to determine whether the allegations fell within the scope of employment as required by § 233. In a rush to get to federal court, Centerville took "matters into its own hands," removing the case to federal court and ignoring the Attorney General's statutory role in this case. (R. 26, D. Ct. Order, p. 4). No matter how eager Centerville is to get to federal court because the Government appeared, only the Government can make the call to remove the case to federal court. Centerville's removal under § 233(*l*)(2)—which only kicks in when the Attorney General *fails to appear*—is frivolous. Any doubt is assuaged by the Attorney General's decision that Centerville is ***not*** an employee of the PHS for this case, so Centerville has no rights under § 233 at all.

Because, as the Attorney General decided, Centerville cannot claim immunity under § 233, its claim to federal officer jurisdiction under § 1442 also fails. Tellingly, Centerville does not even grapple with the propriety of its removal under § 1442 in its motion, discuss the basic federal officer removal framework, or explain why it applies here. This, at best, passing reference to § 1442 is not enough to procure appellate jurisdiction to review this case. Even if it were, Centerville cannot use § 1442 as a workaround to commandeer federal courts to usurp the Attorney General and the Secretary's statutory roles in § 233. The removal and resultant immunity provisions are, indeed, "part-and-parcel" with substantive determinations about

§ 233's applicability to Centerville. And the Attorney General's decision on Centerville's status is determinative. The district court got it right. Centerville's paltry chance of success on the merits alone defeats its request for a stay.

Though there is no need to gild the lily, the remaining factors also counsel against granting the stay. As for its purported irreparable harm, Centerville claims the prospective of immunity renders continued litigation an "irreparable harm." But it has no shot at immunity because the Attorney General already determined that Centerville did not act within the scope of employment. And continued litigation cannot amount to *irreparable* harm. Denying a stay here benefits the public interest, too, because it honors the framework prescribed by Congress. It also allows the litigation to forge forward to redress Centerville's continued sharing of personal health information with impunity. As for Plaintiff's own interest, issuing a stay pending an appeal that has no chance of success on the merits would be against her interests. For these reasons, no factors warrant a stay, and the Court should deny the motion.

## II. <u>BACKGROUND</u>

### A. Statutory Background

Because Centerville's removal is intertwined with a complex statutory scheme, some preliminary orientation into the processes and procedures under the Public Health Service Act ("PHSA") is helpful. The PHSA protects officers and PHS

employees from personal liability "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions" while acting within the scope of employment. 42 U.S.C. § 233(a); *see also Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (concluding PHS employees are "absolute[ly] immune for actions arising out of the performance of medical or related functions within the scope of their employment."). Instead of personal liability, the PHSA makes a claim under the Federal Tort Claims Act ("FTCA") the exclusive remedy for a PHS-deemed employee's "act[s] or omission[s]." 42 U.S.C. § 233(a).

Congress tasked the Attorney General with defending these potential FTCA actions. *See id.* § 233(a)-(c), (d). Sensibly, then, Congress required the Attorney General in consult with the Secretary of Health and Human Services ("the Secretary") to decide whether a PHS-deemed entity's action falls within the scope of employment to be covered under the FTCA. In fact, when an action is commenced against a PHS employee in state court, PHSA ***requires*** removal to a federal district court "[u]pon certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose." *Id.* § 233(c). This allows the United States to then be substituted, and the claim can proceed under the FTCA. *Id.*

The Federally Supported Health Centers Assistance Act of 1995 ("FSHCAA") expanded PHSA protections to certain federally funded, public or

4

nonprofit health centers receiving federal funds under 42 U.S.C. § 254b. To be *eligible* for protection under the PHSA, though, covered entities must follow a different process. First, an entity receiving funding under § 254b must be "deemed to be an employee" of the PHS by the Secretary. *See* 42 U.S.C. § 233(g)(1)(A)-(B). This "deeming notice" comes in the form of a letter, which explains that the entity is considered a PHS employee for actions taken within the scope of its employment and obligations under § 254b. (*See, e.g.*, R. 1-4, Exhibit C to Notice of Removal, pp. 2-9). Once "deemed" an employee under the PHS, the entity – subject to certain conditions – is eligible for FTCA protection "to the same extent" as PHS employees. *Id.* § 233(g)(1)(A)-(B).

This initial deeming notice, however, does not confer *carte blanche* immunity under § 233 to covered entities. Because these "private" PHS employees are not directly within the federal government's immediate control, the federal government—through the Attorney General—retains the right to make sure the deemed entity acted within the scope of its purported federal employment before jumping into litigate the case. *See El Rio Santa Cruz Neighborhood Health Ctr. v. United States Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1273 (D.C. Cir. 2005). This makes sense because Congress did not require the federal government to be omniscient when it enacted the FSHCAA. *Id.* So if an action is brought in state court against an entity "deemed" a PHS employee, the FSHCAA circumscribes the

following procedure to allow the government to make the requisite statutory assessment:

> If a civil action or proceeding is filed in a State court against any entity described in subsection (g)(4) . . . , the ***Attorney General***, within 15 days after being notified of such filing, shall make an appearance in such court and advise such court as to whether the Secretary has determined under subsections (g) and (h), that such entity . . . is deemed to be an employee of the Public Health Service ***for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding***. Such advice shall be deemed to satisfy the provisions of subsection (c) that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility.

42 U.S.C. § 233(*l*)(1) (emphasis added).

Under this provision, the Attorney General must appear within fifteen days of notification to make a ***second*** decision as to whether the conduct alleged in the lawsuit occurred within the scope of employment. If the Attorney General, in consultation with the Secretary, decides that the entity's alleged conduct arose within the scope of employment, the ***must*** remove the case, the entity is presumed to have absolute immunity, and the United States is substituted so that the case could proceed under the FTCA. *Id.* § 233(c). The case, in other words, becomes the government's responsibility to digital as part of the benefit conferred to the deemed entity under the FSHCAA. The case will then remain in federal court, unless "the district court determine[s] . . . that the case so removed is one in which a remedy

6

by suit within the meaning of subsection (a) . . . is not available against the United States." *Id.*

What happens if the Attorney General doesn't appear within fifteen days as required by § 233(*l*)(1)? Section 233(*l*)(2) kicks in, which allows the deemed entity to take matters into its own hands. In only that circumstance, the entity-deemed-employee may independently remove the action to federal court, and the state court proceeding is stayed "until [the district court] conducts a hearing, and makes a determination, as to the appropriate forum or procedure for assertion of the claim for damage . . . ." *Id.* In other words, if the Attorney General doesn't timely appear, then the district court picks up the slack to decide whether the deemed entity acted within its scope of employment and whether the United States should be substituted in. *Id.* As this Court has recognized, "Section 233(*l*)(2)'s implied grant of subject matter jurisdiction is limited." *Est. of Campbell by Campbell v. South Jersey Med. Ctr.*, 732 F. App'x 113, 117 (3d Cir. 2018). "It only grants a district court jurisdiction to determine . . . whether to remand the case or to substitute the United States as a party and deem the action as one brought under the FTCA." *Id.*

### B. Factual and Procedural Background

Centerville is a private health center that provides healthcare to approximately 40,000 patients throughout Fayette, Greene, and Washington Counties. (R. 1-1, Compl., ¶ 4). Appellant claims that it receives funds under the 42 U.S.C. § 254b. (R.

1, Notice of Removal, ¶ 1). There is no dispute the Secretary initially deemed Appellant a PHS employee under the FSHCAA. (R. 1-4, Exhibit C to Notice of Removal, pp. 2-9). Consistent with the statutory scheme, the Centerville's deeming notice specifies that its coverage under § 233 extends only to "functions by PHS employees while acting within the scope of such employment." (*Id.*).

On its website, Centerville installed a tool that systematically sends website visitors' personally identifying information to third parties, like Facebook (now "Meta") and Google, with neither their knowledge nor consent. (*Id.* at ¶¶ 1-5). Centerville uses these tools to analyze its patients' experience and website activity, assess the website's functionality and traffic, target patients with advertisements, and measure the results of those advertisement efforts—all to ultimately generate more sales for itself. (*Id.* at ¶ 5-7).

The U.S. Department of Health and Human Services (HHS) has explicitly warned ***against*** this. It explained, "[w]hile it has always been true that regulated entities ***may not impermissibly disclose PHI to tracking technology vendors***, because of the proliferation of tracking technologies collecting sensitive information, […] it is critical for regulated entities to ensure that they disclose PHI only as expressly permitted or required by the HIPAA Privacy Rule."[1] (*Id.* at ¶ 111).

---

[1] U.S. Department for Health and Human Services, Office for Civil Rights, "Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates," available at https://www.hhs.gov/hipaa/for-

Tracking technologies, like the Meta Pixel, can disclose individuals' information including PHI provided when they use the entity's website or mobile applications, including medical records numbers, addresses, appointment dates, person's IP addresses or location, medical device IDs, or unique identifying codes. (*Id.* at ¶¶ 100-04).

Plaintiff Doe is a Pennsylvania citizen residing in Washington County, Pennsylvania. (*Id.* at ¶ 27). She is a patient at Defendants' facilities and a victim of the unauthorized disclosure of private information via the Meta Pixel and other tracking technologies embedded on Centerville's website. (*Id.*) Plaintiff expected that Centerville would take the steps necessary to secure her sensitive, non-public data, PII and PHI. (*Id.* at ¶ 91).

On May 5, 2023, Doe filed suit against Centerville in the Court of Common Pleas, Washington County, Pennsylvania, Case No. 2023-2922, individually and on behalf of the proposed Class of all Pennsylvania citizens whose PII/PHI was collected and transmitted by the Appellant to an unauthorized party using pixels. (*id.* at ¶ 137). She asserted causes of action for invasion of privacy—intrusion upon seclusion (*id.* at ¶¶ 152-62); breach of implied contract (*id.* at ¶¶ 163-75); unjust enrichment (*id.* at ¶¶ 176-83); breach of fiduciary duty (*id.* at ¶¶ 184-90); violation

---

professionals/privacy/guidance/hipaa-online-tracking/index.html (last accessed Nov. 12, 2023) (citations omitted) (emphases added); *see also*, *id.*, citing to 45 CFR 164.508(a)(3); 45 CFR § 164.501 (definition of "Marketing").

of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 320101, *et seq.* (*id.* at ¶¶ 191-205); and violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 6701 (*id.* at ¶¶ 206-219).

Recognizing that it was required to give the U.S. Attorney and HHS notice of this action, Centerville delivered Plaintiff's Complaint to HHS and the U.S. Attorney on May 18. (R. 1, ¶ 33). Well within the statutory fifteen-day period to enter an appearance, on May 31, the Attorney General, through the U.S. Attorney for the Western District of Pennsylvania, appeared in the state court action "for the limited purpose of notifying the Court as to whether the Secretary of the U.S. Department of Health and Human Services (HHS) has advised that Centerville Clinics, Inc. has been 'deemed' to be an 'employee of the Public Health Service' *with respect to the actions or omissions that are the subject of this action*." (R. 1-3 at p. 2 (emphasis added)). The notice further explains, "[a]t present, HHS has advised only that Centerville Clinics, Inc., has been 'deemed' to be an 'employee of the Public Health Service.' *HHS has not yet provided its report as to whether the deemed status of Centerville Clinics, Inc., under 42 U.S.C. §§ 233(g) and (h) extends to the acts or omissions that are the subject of this civil action*." (*Id.* (emphasis added)). Despite the Attorney General's appearance, on June 15 and without a statutory basis, Defendant removed the case to the federal district court, citing as 42 U.S.C.

§ 233(*l*)(2) and 28 U.S.C. § 1442 as grounds for removal. (R. 1).

On July 14, Doe timely moved to remand the matter to state court, asserting that the Court lacked subject-matter jurisdiction under either statute cited in the Notice of Removal. (R. 20, Mot. to Remand, p. 2). Appellant opposed the motion. (R. 23, Appellant's Response in Opp.). The motion was ripe for disposition after August 7, 2023. (R. 25, Doe's Reply).

On September 14, the district court granted Doe's motion to remand. In that Order, the Court spelled out exactly how removal under § 233 works:

> Once the Attorney General had made a timely appearance, Centerville needed to wait for the appropriate authorities to make the relevant determinations as stated in § 233, rather than take matters into its own hands. Indeed, "a final determination of whether the federal government should represent a particular defendant in a civil action may take more than two weeks." If HHS and the Attorney General conclude that Centerville was a deemed employee acting within the scope of its employment for the actions underlying Plaintiff's suit, then the Attorney General may remove this case at that time, as he is empowered to do.

(R 26 at p. 4-5 (internal citations omitted)). Because Defendant's asserted federal officer removal is based on its § 233 status, which the Attorney General was required to assess, the district court concluded removal under § 1442 was also improper. (*Id.* at p. 5). "To permit Centerville to raise § 233 as a defense for purposes of § 1442, when it didn't abide by the removal procedures of § 233, would sidestep the framework of § 233." (*Id.* (citing *Nye v. Hilo Med. Ctr.*, No. 09-220, 2010 WL

931926, at *3 (D. Haw. Mar. 11, 2010)). The Court thoughtfully explained, "[t]his isn't a procedural nitpick—the removal provisions are part-and-parcel with substantive determinations about § 233's applicability to Centerville." (*Id.* (citing 42 U.S.C. § 233(a)).

The next day, Centerville moved the district court to stay its remand order pursuant to Federal Rule of Civil Procedure 62(a) or a stay pending appeal. (R. 27). On September 19, in an exciting turn of events, the United States Attorney for the Western District of Pennsylvania filed a notice in the state-court docket, stating that Centerville "is not deemed to be an employee of the Public Health Service with respect to the alleged acts or omissions giving rise to this case. Accordingly, the United States will not intervene in this case or remove it to federal court." (R. 30-1). Doe brought the notice to the district court's attention as part of her opposition to Appellant's motion to stay. (R. 30). The next day, the district court denied the stay, agreeing that the Attorney General's decision renders Centerville's chance of succeeding on any appeal infinitesimal. (R. 32).

### III. <u>ARGUMENT</u>

Centerville previews the arguments that it intends to make in this matter, asserting that it deserves a stay because it is "likely to succeed on the merits of its appeal." (Appellant Br. at 9). Centerville's arguments, however, rest on a tortured reading of the relevant statute, 42 U.S.C. § 233, contrived to cut the Attorney

General out of his statutory role. Centerville's reading, the district court agreed, would turn the statute on its head. For this reason, no argument raised by Appellant is likely to succeed on the merits, and thus, there is no basis for a stay of the district court's remand order. The remaining factors likewise do not counsel in favor of granting Centerville's request for a stay. It will suffer no irreparable harm from being forced to continue to litigate. And it is in the public interest to allow the statutory scheme intended by Congress to take effect in this matter. In short, Appellant cannot meet its heavy burden to merit a stay.

## A. Standard for Stay

"A stay is an 'intrusion into the ordinary processes of administration and judicial review.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009). Therefore, it "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Id.* (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). The moving party bears "the heavy burden for making out a case for such extraordinary relief." *Winston-Salem/Forsyth Cnty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971).

To determine whether the "extraordinary" circumstances to merit a stay exist, a court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interest in the proceeding; and (4) where the public interest lies." *Nken*,

556 U.S. at 434. In its analysis, the Court balances all four factors, but the first and second are the "most critical." *Id.* Accordingly, "even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the stay opponent if a stay is granted, it is still required to show, at a minimum, serious questions going into the merits." *In re Revel AC, Inc.*, 802 F.3d 558, 570 (3d Cir. 2015).

**B.  There is no likelihood of success that Appellant prevails on the merits.**

This case concerns Centerville's failure to follow basic statutory creed, and as much as Appellant would like for this Court to rewrite the statute to its liking to manufacture jurisdiction here, there is simply no basis for doing so.

1. <u>Centerville's removal under Section 233(*l*)(2) was entirely improper and the Court lacks jurisdiction under this provision.</u>

There is no dispute that Centerville removed the action, despite the Attorney General's timely appearance and his ultimate decision that Centerville did not act within the scope of its PHS employment. This plainly renders its removal under § 233(*l*)(2) improper because a PHS-deemed entity may remove ***only when*** "the Attorney General fails to appear in State Court within the time period prescribed under paragraph (1)." Given the nature of § 233, it also deprives Appellant of any immunity under the statute. 42 U.S.C. § 233(c). For this reason, Centerville has failed to meet its burden to show a likelihood chance of success on the merits.

a. *The Appellant's Deeming Notice cannot usurp the Attorney General's statutory role.*

Centerville resists these rudimentary points established by the crystal-clear text of the statute. Centerville says the district court erred in concluding "[t]he Attorney General has *no* authority to make deeming determinations" and, relatedly, Section 233(*l*)(1) does not require a separate scope determination because it already has been issued a deeming notice. (Appellant Br. at 11-12).

The plain letter of the statute says otherwise. Section 233(c), which governs removal and immunity determinations under the PHSA, expressly states that an action shall be removed: "**[*u*]pon a certification by the Attorney General** that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose." 42 U.S.C. § 233(c). Section 233(*l*)(1) demands the same certification, requiring the Attorney General to advise the Court "whether the Secretary has determined under subsections (g) and (h), that such entity . . . is deemed to be an employee of the Public Health Service for the purposes of this section **with respect to the actions or omissions that are the subject of such civil action or proceeding**." 42 U.S.C. § 233(*l*)(1). Centerville's claim that its deeming notice is the same thing as the scope of employment certification strains credulity because Secretary made that decision **well before** the lawsuit was filed. In other words, the statute very clearly requires a decision tethered to the facts of the

underlying proceeding—but the notice, by definition, cannot consider the specific allegations in this matter. The deeming notice, in fact, makes this point clear, explaining that coverage extends only to "functions by PHS employees while acting within the scope of such employment." (R. 1-4, Exhibit C to Notice of Removal).

The foregoing understanding squares with the broader statutory scheme. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (instructing courts to interpret statutes in a manner that "fit[s], if possible, all parts into an harmonious whole"). Read together, the subparts of § 233(*l*) contemplate one thing that must happen before removal and immunity: a decision as to whether the deemed entity acted within the scope of employment is made. Section 233(*l*)(1) gives the Attorney General and the Secretary first dibs to make that determination upon a timely appearance, and then only the federal government, as the party who would have to litigate the case, can remove the case to federal court.

Section 233(*l*)(2), by contrast, still requires the same decision to be made, but it allows the federal court to do the heavy lifting by holding a hearing on the same issue. But, as explained by the D.C. Circuit, removal under Section 233(*l*)(2) is available only to deemed entities. *El Rio Santa Cruz Neighborhood Health Ctr.*, 396 F.3d at 1272 ("[A] defendant physician in a state court malpractice action would have no occasion to invoke § 233(*l*)(2) when the Attorney General failed to appear, unless the Secretary had deemed the physician covered by the FTCA."). So, the

hearing following § 233(*l*)(2) removal must serve a different purpose than the deeming notice itself. Indeed, "[t]he hearing in federal district court following § 233(*l*)(2) removal was designed to determine whether the United States should properly be substituted in place of the deemed entity. *See id.* (citing 42 U.S.C. § 233(c)); *see also Est. of Campbell by Campbell*, 732 F. App'x at 117 (explaining limited purpose and jurisdiction of § 233(*l*)(2)). This necessarily requires an independent inquiry into whether Centerville acted within the scope of its employment. So, Centerville must be mistaken that the deeming notice is determinative that it acted within the scope of employment. The statute clearly contemplates a separate process, which Centerville tried to sidestep in this case.

In alignment with these points, other circuits have agreed that the deeming notice is separate from the scope of employment determination. In *Sherman by and through Sherman v. Sinha*, the Ninth Circuit rejected the same argument raised by Appellant, explaining that "[c]ertification of a public health organization under FSHCAA does not necessarily cover all of the organization's employees or all of an employee's activities. Accordingly, a final determination of whether the federal government should represent a particular defendant in a civil action may take more than two weeks." 843 F. App'x at 873. The First Circuit similarly observed, when explaining the mechanics of the PHSA and FTCA coverage, "that the Secretary's annual 'deeming' determination does not conclusively establish PHSA and FTCA

coverage with respect to a particular lawsuit when – as in this case – an action is brought against a physician affiliated with a federally-funded health center." *O'Brien v. United States*, 56 F.4th 139, 148 (1st Cir. 2022).

Finally, the FSCHAA's implementing regulations are consistent with this understanding. As the Secretary explained in its final rule promulgating the implementing regulations: "The applicability of [the FSHCAA] and 42 U.S.C. § 233(a) to a particular claim or case will depend upon the determination or certification (as appropriate) by the Attorney General that the individual or entity is covered [by the FSHCAA] and was acting within the scope of employment." 60 Fed. Reg. 22,530, 22,531 (May 8, 1995). It would make no sense for the regulations to contemplate such a decision by the Attorney General, if the deeming notice already did the job.

Thus, the statute clearly delegates to the decision on whether the deemed entity acted within the scope of employment to Attorney General, after a timely appearance. 42 U.S.C. § 233(*l*)(1). Because the Attorney General timely appeared and decided Centerville did not act within the scope of employment, the decision is dispositive and cannot be challenged by Centerville in this proceeding. Thus, this argument, too, has little chance of success on the merits.

b. *Section 233(l)(2) permits an individual defendant to remove to federal court only when the Attorney General fails to appear.*

Appellant next contends that the district court erred by failing to require the Attorney General to also decide within fifteen days whether Centerville acted within the scope of employment. (Appellant Br. at 13-14). Due to that failure, Centerville says, it had a right to remove under § 233(*l*)(2). (*Id.*). Appellant does not cite a single case in support of its argument. (*Id.*). But as the district court correctly concluded, the plain text of the statute does not graft this additional requirement onto § 233(*l*)(2).

Under § 233(*l*)(1) the Attorney General must do two things: (1) make a court appearance within 15 days of receiving notice of a relevant civil action or proceeding; and (2) advise whether the Secretary has determined that the defendant is deemed to be an employee of the Public Health Service "with respect to the actions or omissions that are the subject of such civil action or proceeding." By contrast, § 233(*l*)(2) provides that a failure by the Attorney General to fulfill ***obligation number one***—appearance within fifteen days—triggers a right of removal to federal court. The plain text of subsection, however, does not create a trigger for removal based on an alleged failure to satisfy obligation number two. So as a matter of textual precision, Appellant's argument fails because it quite literally adds a temporal requirement to § 233(*l*)(2) that is unsupported by the plain, unambiguous text.

Basic canons of statutory interpretation counsel in favor of this result. When

an item is not included in a list of statutory elements, Courts should exclude that item from their interpretation of the statute. *See U.S. v. McQuilkin*, 78 F.3d 105, 108 (3d Cir. 1996) (relying on doctrine of *inclusio unius est exclusio alterius*); *In re TMI*, 67 F.3d 1119, 1123 (3d Cir. 1995). The opportunity to ensure that the list of removal triggers in § 233(*l*)(2) included every item mentioned in § 233(*l*)(1) was obvious, yet Congress did not refer to the content of the Attorney General's advice in 42 U.S.C. § 233(*l*)(2). Thus, § 233(*l*)(2) "is as significant for what it omits as for what it says." *See In re TMI*, 67 F.3d at 1123.

Courts around the country have uniformly reached the same conclusion on this issue. *See, e.g.*, *Allen v. Christenberry*, 327 F.3d 1290, 1294-95 (11th Cir. 2003) ("The next day after the Attorney General appeared[,] the defendant doctors themselves removed the case to federal court, something the statute does not permit."); *Sherman by and through Sherman*, 843 F. App'x at 873 ("If allowed, the premature removal of the case to the district court would bypass the Attorney General's initial determination of whether a defendant public health worker should be deemed a federal officer. Providing the Attorney General with the opportunity to consider the issue is a prerequisite to federal jurisdiction."); *see also Young v. Temple University Hosp.*, 2019 WL 109388, at *2-3 (E.D. Pa. Jan. 3, 2019) (concluding removal under § 233 was improper where "[a]t the time of removal, the United States had not yet deemed [the defendant] a federal employee acting within

the scope of her employment during the relevant time period, nor had [Defendant] herself removed the case after a failure by the Attorney General to make an appearance in the case within fifteen days of filing in state court"); *Blumberger v. Cal. Hosp. Med. Ctr.*, 2022 WL 16698682, at *3 (C.D. Cal. Nov. 2, 2022) ("[R]emoval is improper under the plain text of § 233(*l*)(2) if the Attorney General appeared within 15 days after being notified of the state court action, even if that appearance was only to advise the court that no determination had yet been made."); *Babbitt v. Dignity Health*, 2018 WL 6040472, at *3 (C.D. Cal. Nov. 10, 2019) (concluding same); *Q v. Cal. Hosp. Med. Ctr.*, 2018 WL 1136568, at *2 (C.D. Cal. Mar. 1, 2018) (same); *K.C. v. Cal. Hosp. Med. C.tr.*, 2018 WL 5906057, at *3-5 (C.D. Cal. Nov. 13, 2018) (same).

And aside from being contrary to the statutory scheme itself, the approach advocated by Centerville, as the Ninth Circuit explained, is "unworkable as a practical matter" because "[c]ertification of a public health organization under [42 U.S.C. § 233] does not necessarily cover all the organization's employees or all of an employee's activities. Accordingly, a final determination of whether the federal government should represent a particular defendant in a civil action may take more than two weeks." *Sinha*, 843 F. App'x at 873.

The district court, then, did not err on this point either and Centerville has no little chance of success.

c. *The district court had no occasion to determine Appellant's immunity, and Centerville is bound by the Attorney General's determination.*

Appellants relatedly argue that the Attorney General's scope of employment certification is not a prerequisite to removal nor immunity. (Appellant Br. at 14). But, as discussed at length above, it is a prerequisite to both unless the Attorney General does not appear (in which case the federal court must decide the question). Removal and immunity both hinge upon the Attorney General's certification and appearance following his timely appearance. 42 U.S.C. § 233(c), (*l*). Put another way, here, the Attorney General appeared and determined that Appellant did not act within the scope of its employment. A hearing on whether Centerville acted within the scope of employment to entitle it to § 233 immunity is therefore unavailable. Appellant is not entitled to immunity under § 233.

Appellant's contention "[t]hat certification is no more a prerequisite to removal than it is a precondition to immunity" misapprehends Supreme Court precedent. (Appellant Br. at 14). In *Hui v. Castaneda*, the plaintiff filed a *Bivens* action against the defendants in federal court. The Court concluded that the defendant alleging § 233(a) immunity could prove immunity under ordinary rules of evidence. 559 U.S. at 811. But there, the Court had *occasion* to review the case pursuant to the ordinary rules of evidence because the case was initially filed in federal court and the district court had federal question jurisdiction. *Id.* By contrast,

here, there is no occasion because the vehicle to determine immunity – § 233(*l*)(2) – does not apply. And in any case, the Attorney General's command that Appellant did not act within the scope of employment is dispositive—the statute, after all, vests authority in the Attorney General to decide.

The other cases cited by Defendant are equally unavailing because, again, the Attorney General never appeared in those cases, so the courts had proper occasion to review immunity under § 233(*l*)(2). (Appellant Br. at 15). *See Agyin v. Razmzan*, 7:17-cv-04681-KMK, Dkt. 3, at p. 13, ¶ 46 (S.D.N.Y. 2017) (Notice of Removal) ("Here, the Attorney General failed to appear in the state court action, as required under 42 U.S.C. § 233(*l*)(1)."); *Friedenberg v. Lane County*, 6:18-cv-00177-MK, ECF Dkt. 1 (D. Oreg. 2018) (Notice of Removal), at p. 11-12 ¶ 29 ("[T]he Attorney General never appeared in the state court action, as contemplated by 42 U.S.C. § 233(*l*)(1); *see also Ford v. Sandhills Medical Foundation*, 2022 WL 1810614, at *3 (D.S.C. June 2, 2022) ("In this case, the Attorney General did not appear in state court within fifteen days of receiving notice . . . .").

As a last-ditch effort, Centerville tries to argue why it should have immunity here. (Appellant Br. at 15). First, its effort is for nought because the Attorney General already determined (based on the Secretary's recommendation) that it did not act within the scope of employment. Second, Centerville never raised these arguments before the district court in its opposition to Appellee's motion to remand (R. 23 at

pp. 17-26). It did not separately move to substitute the United States or proffer any evidence on the point (*Id.*). Therefore, any argument as to why Centerville thinks it acted within the scope of employment or is actually entitled to immunity is not properly before this Court.

2. Centerville's removal under Section 1442 was improper.

    a. *This court lacks appellate jurisdiction because Centerville's basis for removal under Section 1442 is bare or frivolous.*

Federal courts "have an independent duty to satisfy [themselves] of [their] appellate jurisdiction." *Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 113, 118 (3d Cir. 1998). It is true that § 1442 confers appellate jurisdiction over the whole order remanding the case, including other bases for jurisdiction that ordinarily do not confer a direct appeal. *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S.Ct. 1532, 1537 (2021). But a bare or frivolous invocation of Section 1442 cannot confer appellate jurisdiction. *See, e.g.*, *Agyin v. Razmzan*, 986 F.3d 168, 174 (2d Cir. 2021) (explaining a "bare or frivolous invocation" of 28 U.S.C. § 1442 does not create appellate jurisdiction).

Centerville spends no time in its brief before this Court explaining why jurisdiction under § 1442 is proper in this circumstance. And indeed, any argument under § 1442, to the extent it even exists, is marshalled in tandem with those under § 233(*l*)(2). This gives the appearance that Centerville tacked on federal officer

jurisdiction, not because it thought it was acting under a federal officer, but to manufacture a right to appeal. Indeed, Appellant's brief and its brief before the district court do not even engage with the basic four elements required to establish § 1442 jurisdiction. This cursory inclusion of § 1442 is exactly the type of "bare or frivolous invocation" that does not create appellate jurisdiction.

      b. *Even reaching the merits, Centerville has no likelihood of success to show it acted within the meaning of Section 1442.*

The minimal argument Centerville devotes to its jurisdictional grab as a federal officer underscores just how weak its claim is. For one thing, Centerville does not address the district court's conclusion that the only colorable defense it raised—immunity under § 233—fails based on its circumventing of statutory scripture and the Attorney General's determination that Centerville did not act within the scope of its employment. Appellant's approach would create an improper workaround to § 233 – which otherwise empowers the Attorney General to decide the proprietary of removal and immunity in this circumstance. As the district court correctly concluded, then, without a "colorable federal defense," Centerville's claim to federal officer jurisdiction fails. (R. 26 at p. 5).

For another, Centerville does not explain how it "acted under" federal officer or how these actions arose within the scope of its purported federal officer. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016). To "act under" a federal

officer, it must show that it assisted or helped to carry out that federal superior's duties. *See Watson v. Philip Morris Cos. Inc.*, 551 U.S. 142, 151 (2007). But here, the conduct alleged goes well beyond the scope of Appellant's relationship with the federal government. And HHS explicitly instructed ***against*** implementations of the tools that Centerville implemented. (R.1-1 at ¶ 111). So, there is little doubt Centerville did not act pursuant to any federal status or under the color of federal duties when it installed the software on its website.

The Second Circuit's discussion of this point in *Agyin v. Razmzan* is instructive. 986 F.3d at 179. There, the Second Circuit juxtaposed its facts with those from a prior opinion of the court, *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 786 F. App'x 604, 606 (2d Cir. 2014), where it found that a clinic was not "acting under" a federal officer under 42 U.S.C. § 254b. *Id.* The Court explained:

> In *Veneruso*, the court concluded that Mount Vernon Neighborhood Health Center, "a federal grant recipient under the Public Health Service Act," was not acting under a federal officer when it received distributions from a joint venture partner in violation of New York law. 586 F. App'x at 605-08. The court explained that "Mount Vernon does not and cannot contend that any of the many federal regulations to which it is subject directed it to receive ... the [illegal] [d]istributions." *Id.* at 608. The implication is that if federal regulations had directed the challenged conduct, the clinic would have been acting under a federal officer and removal would have been appropriate.

*Agyin*, 986 F.3d at 179.

This case falls closer to *Veneruso* than *Agyin*. Unlike the actions in *Agyin*, Centerville has no regulation or statutory provision to hang its federal officer hat on. And, as discussed, the conduct was ***explicitly denounced*** by the HHS. With nothing to show that it acted under a federal officer, acted with the color of federal office, or otherwise has a colorable federal defense, Centerville's removal under § 1442 also has no chance of success of the merits.

\*   \*   \*

In sum, Appellant's motion fails because it shows ***no*** likelihood of success on the merits. On this ground alone, the Court should deny Appellant's request.

**C. Appellant cannot show that it will be irreparably harmed.**

Centerville claims it will be irreparably harmed if it is forced to litigate the case with a lingering possibility of immunity under § 233. (Appellant Br. at 16-17). But there is no possibility of immunity attaching because the Attorney General already rendered its decision that Centerville did not act within the scope of its employment. That resolves this issue.

Even considering Centerville's arguments, they still fail on their face. At bottom, Centerville says that it will be exposed to unnecessary litigation by being forced to continue to litigate in state court. "Mere litigation expense, even substantial and recoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974).

Centerville incorrectly assumes that "it is entitled to a federal forum" to make the requisite immunity determination. As noted earlier, that decision was up to the Attorney General, not the district court, because the Attorney General properly appeared. Now that the Attorney General has decided the issue, there is no concern Centerville will be prejudiced by continuing to litigate this case in state court. Doing so would usurp the Attorney General's statutory role. Centerville will not be harmed by continuing to litigate in state court, after it prematurely removed the case under § 233(*l*)(2), and after the Attorney General ultimately determined that § 233 doesn't apply.

**D. Doe will be harmed by a stay.**

While Plaintiff acknowledges that delay alone cannot constitute, "[i]ssuing a stay pending an appeal that is not likely to succeed on the merits would be against the interests" of Plaintiff. *Fernandez v. Tyson Foods, Inc.*, 2021 WL 1257557, at *4 (N.D. Iowa Jan. 28, 2021). That is even clearer now that the Attorney General has determined no immunity will apply here. This factor weighs handily in favor of denying the stay. Furthermore, Defendant's conduct in wrongfully removing the case and taking the immunity decision away from the Attorney General has vexatiously multiplied this litigation and already harmed Plaintiff by increasing litigation costs and delaying the case.

**E. The public interest is furthered by denying a stay.**

The final stay factor considers "how a stay decision has consequences beyond the immediate parties." *In re Revel AC, Inc.*, 802 F.3d at 569. A stay of this Court's order is not in the public interest. It is in the interest of the public for this Court to enforce the mandate set in § 233(*l*)(1), by honoring the Attorney General's determination that he had a right to make. *See Kathleen S. v. Dep't of Pub. Welfare of Com.*, 10 F. Supp. 2d 476, 481 (E.D. Pa. 1998) (explaining that enforcing a federal statute is in the interest of the public, weighing against denial of a stay). In the circumstances raised in this record, Congress delegated authority to the Attorney General to make that decision—i.e., allowing the federal government, as Centerville's employer for § 233 purposes, to decide whether conduct falls within the scope of employment. If the Attorney General didn't appear in state court, as in *Agyin*, that would be a different question. But here, the Attorney General did appear, so his decision to fulfill his statutory duties must be honored. Saying otherwise would render that process superfluous in virtually every circumstance, because defendants covered by § 233 could always use § 1442 to cut out the Attorney General and his statutory responsibilities. The public interest, as such, is handily in favor of denying the stay.

It is also in the public's interest to allow the case to proceed where Centerville seeks to rewrite a statute so that it can seek a different venue to extend the time

period in which it can continue its violations of selling the putative class's data without their consent.

## IV. CONCLUSION

In sum, Appellant has not met its "heavy burden" to show that a stay pending appeal is warranted here. Among other reasons, there is no meaningful chance of success on the merits. The Court should deny Appellant's motion for a stay of the district court's order granting remand pending appeal. To the extent the Court agrees that Centerville's bare invocation of § 1442 fails to procure appellate jurisdiction, the Court should dismiss the appeal.

Dated: November 14, 2023         Respectfully submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV, TN Bar No. 23045
Michael C. Iadevaia, NY Bar No. 5783295
Stranch, Jennings, & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com

Lynn A. Toops, IN Bar No. 26386-49
Cohen & Malad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com

*Attorneys for Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this reply was prepared in Microsoft Word with 14-point Times New Roman, a proportionally spaced typeface. The brief contains a total of 7,321 words, as calculated by my word processing software, excluding the statements and other materials specified in Federal Rule of Appellate Procedure 32(f).

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV

## CERTIFICATE OF BAR ADMISSION

Per 3d Cir. L.A.R. 28.3(d), I hereby certify that my name appears on the motion, and I am a member of the bar of this Court. My co-counsel are also members of the bar of this Court.

*s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2023, a copy of this reply was served on counsel of record for all parties through the Court's CM/ECF system. It is hereby certified that a copy of the foregoing was also sent by first-class mail and email on this 14th day of November 2023 to the following:

Kezia O.L. Taylor
Assistant U.S. Attorney
Western District of Pennsylvania
Joseph F. Weiss, Jr. U.S. Courthouse
700 Grant Street, Suite 4000
Pittsburg, PA 15219
Email: kezia.taylor@doj.gov

*s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV