No. 23-2738

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

JANE DOE, on behalf of herself and those similarly situated,

*Plaintiff-Appellee,*

v.

CENTERVILLE CLINICS INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 2:23-cv-01107

### APPELLANT'S REPLY BRIEF

FELDESMAN LEIFER LLP
Matthew Sidney Freedus
Rosie Dawn Griffin
Khatereh S. Ghiladi
1129 20th Street, N.W., Suite 400
Washington, DC 20036
202.466.8960

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

INTRODUCTION ................................................................1

ARGUMENT ....................................................................2

I.  This Court Has Jurisdiction Over the District Court's Remand Order and Denial of Centerville's Absolute Immunity .......................................3

II.  Centerville Properly Removed This Matter To Federal Court Under 42 U.S.C. § 233(*l*)(2) ....................................................4

A. The Attorney General Failed to Fulfill Its Two-Part, § 233(*l*)(1) Obligation Within the Required Fifteen Day Period ...........................4

B. Centerville, Irrevocably Deemed to Be a PHS Employee During the Relevant Period, Is Entitled to a Federal Forum In Which To Adjudicate Its Claim to Immunity ................................10

III.  Centerville, A Federal Officer Or Person Acting Under A Federal Officer, Properly Removed Under 28 U.S.C. § 1442 ............................13

A. "Acting Under" Must Be Liberally Construed In Favor Of Removal..................................................................15

B. Centerville's Fulfillment of its Federal Grant Project Involves an Effort to Assist or Help Carry Out the Duties or Tasks of the Federal Superior ................................................................18

C. Centerville Need Only Show That Plaintiff's Allegations Are Directed At Its Relationship With The Government ..........................23

CONCLUSION ....................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agyin v. Razmzan,*
986 F.3d 168 (2d Cir. 2021) ......................................................*passim*

*Allen v. Christenberry,*
327 F.3d 1290 (11th Cir. 2003) ...........................................................7

*Arizona v. Manypenny,*
451 U.S. 232 (1981)................................................................................16

*Babbitt v. Dignity Health,*
No. 18-cv-6528, 2018 WL 6040472 (C.D. Cal. Nov. 10, 2019).........................8

*Blumberger v. Cal. Hosp. Med. Ctr.,*
No. 22-cv-06066, 2022 WL 16698682 (C.D. Cal. Nov. 2, 2022).......................9

*BP P.L.C. v. Mayor & City Council of Baltimore,*
141 S. Ct. 1532 (2021)..............................................................3, 8, 14

*Estate of Campbell v. S. Jersey Med. Ctr.,*
732 Fed. App'x. 113 (3d Cir. 2018) ....................................2, 3, 11, 12

*Chickasaw Nation v. United States,*
534 U.S. 84 (2001)....................................................................................6

*Cohens v. Virginia,*
19 U.S. 264 (1821).................................................................................13

*Colo. River Water Conservation Dist v. United States,*
424 U.S. 800 (1976)..........................................................................12, 13

*In re Commonwealth's Mot. to Appoint Counsel Against or Directed
to Def.'s Ass'n of Phila.,*
790 F.3d 457 (3d Cir. 2015) ...............................................14, 21, 23

*Doe v. Neighborhood Healthcare,*
No. 21-cv-1587, 2022 WL 17663520 (S.D. Cal. Sept. 8, 2022) .......................24

*El Rio Santa Cruz Neighborhood Health Ctr. v. United States*,
    396 F.3d 1265 (D.C. Cir. 2005) ............................................................7

*Ford v. Sandhills Med. Found., Inc.*,
    No. 22-2268, 2024 WL 1335202 (4th Cir. Mar. 29, 2024) ................................24

*Friedenberg v. Lane County*,
    68 F.4th 1113 (9th Cir. 2023) ...............................................3, 10, 16

*Gutierrez de Martinez v. Lamagno*,
    515 U.S. 417 (1995).........................................................2, 10, 11, 12

*Hale v. ARcare, Inc.*,
    No. 22-cv-00117, 2024 WL 1016361 (E.D. Ark. Mar. 8, 2024).....................24

*Henderson v. Shinseki*,
    562 U.S. 428 (2011) ............................................................ 10

*Hui v. Castaneda*,
    559 U.S. 799 (2010) ...................................................... 16, 17

*Jefferson County v. Acker*,
    527 U.S. 423 (1999)...........................................................13

*K Mart Corp. v. Cartier, Inc.*,
    486 U.S. 281 (1988).............................................................5

*K.C. v. Cal. Hosp. Med. Ctr.*,
    No. 2:18-cv-06619, 2018 WL 5906057 (C.D. Cal. Nov. 13, 2018)....................8

*Krandle v. Refuah Health Center, Inc.*,
    No. 22-cv-5039, 2023 WL 2662811 (S.D.N.Y. March 28, 2023)....................23

*Krandle v. Refuah Health Ctr., Inc.*,
    No. 22-cv-4977, 2024 WL 1075359 (S.D.N.Y. Mar. 12, 2024) .............4, 17, 24

*Maglioli v. Alliance HC Holdings LLC*,
    16 F.4th 393 (3d Cir. 2021) .......................................................*passim*

*Marshall v. Lamoille Health Partners, Inc.*,
    No. 22-cv-166, 2023 WL 2931823 (D. Vt. Apr. 13, 2023)...............................24

iv

*Mohr v. Trustees of Univ. of Pennsylvania*,
    93 F.4th 100 (3d Cir. 2024) ........................................................*passim*

*Pennhurst State School & Hosp. v. Halderman*,
    451 U.S. 1 (1981) ..................................................................................22

*United States, ex rel. Polansky v. Exec. Health Res., Inc.*,
    599 U.S. 419 (2023) ...............................................................................5

*Q v. Cal. Hosp. Med. Ctr.*,
    No. 17-cv-7917, 2018 WL 1136568 (C.D. Cal. Mar. 1, 2018) ...........9

*Sherman ex rel. Sherman v. Sinha*,
    843 Fed. App'x 870 (9th Cir. 2021) ..................................................7, 8

*Three Lower Cnties. Cmty. Health Servs., Inc. v. Maryland*,
    498 F.3d 294 (4th Cir. 2007) ................................................................2

*Tyler v. Cain*,
    533 U.S. 656 (2001) ................................................................................6

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
    484 U.S. 365 (1988) ...............................................................................5

*United States v. Am. Tobacco Co.*, 221 U.S. 106, 180 (1911) ........................5

*United States v. Rodgers*,
    466 U.S. 475 (1984) ................................................................................5

*United States v. Stanley*, 483 U.S. 669, 684 (1987) ................................17

*Veneruso v. Mount Vernon Neighborhood Health Ctr.*,
    786 F. App'x 604 (2d Cir. 2014) .......................................................24

*Watson v. Philip Morris Cos.*,
    551 U.S. 142 (2007)..................................................................*passim*

*Willingham v. Morgan*,
    395 U.S. 402 (1969) ..............................................................................16

*Yates v. United States*,
    574 U.S. 528 (2015) ................................................................................6

*Young v. Temple Univ. Hosp.*,
    No. 18-cv-2803, 2019 WL 109388 (E.D. Pa. Jan. 3, 2019) ................................8

**Statutes**

Federally Supported Health Centers Assistance Act of 1992, 59 Fed.
    Reg. 42790-01 ...................................................................................................11

Health Information Technology for Economic and Clinical Health
    Act, Pub. L. No. 111–5 §§ 13001–13424, 123 Stat. 115, 226–79
    (2009) .................................................................................................................19

Special Health Revenue Sharing Act of 1975, § 501, Pub. L. No. 94-
    63, 89 Stat. 342 (1975) .....................................................................................21

28 U.S.C. § 1442 ....................................................................................... *passim*

28 U.S.C. § 1442(a)(1) ............................................................................... *passim*

31 U.S.C. § 6301 .............................................................................................22

31 U.S.C. § 6303 .............................................................................................23

31 U.S.C. § 6304 .............................................................................................22

42 U.S.C. § 233(a) ..................................................................................... *passim*

42 U.S.C. § 233(g)(1)(F) ..................................................................................1

42 U.S.C. § 233(*l*) ..................................................................................... *passim*

42 U.S.C. § 233(*l*)(1) ................................................................................. *passim*

42 U.S.C. § 233(*l*)(2) ................................................................................. *passim*

42 U.S.C. § 247d-6d .......................................................................................19

42 U.S.C. § 247d-6e .......................................................................................19

42 U.S.C. § 254b .......................................................................................1, 20

42 U.S.C. § 254b(e)(5)(D) ..............................................................................21

**Regulations**

2 C.F.R. pt. 51c ..................................................................................21

45 C.F.R. pt. 75..................................................................................21

**Legislative Materials**

S. Rep. No. 94-29 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 469............................20

**Other Authorities**

HHS, *Grants Policy Statement*, at p. I-5 (Jan. 2007),
    https://www.hhs.gov/sites/default/files/grants/grants/policies-
    regulations/hhsgps107.pdf ..............................................................20

Karl Llewellyn, *Remarks on the Theory of Appellate Decision and the
    Rules or Canons About How Statutes Are to Be Construed*, 3 Vand.
    L. Rev. 395 (1950) ............................................................................6

## INTRODUCTION

Appellant Centerville Clinics, Inc. ("Centerville"), a federally-funded community health center, is entitled under 28 U.S.C. § 1442 and 42 U.S.C. § 233(*l*)(2)—two different and alternative officer removal statutes—to a federal forum in which to resolve its claim to absolute immunity from Plaintiff's suit. Both removal statutes, in broad language, serve a single purpose: to ensure that claims to federal immunity are adjudicated in federal court.

This Court should reject the arguments Plaintiff and the United States advance against federal jurisdiction. Plaintiff's arguments are rooted in a steadfast refusal to recognize what Centerville is: a federally-funded health center. The dogged insistence that Centerville is a "hospital" reveals Plaintiff's failure to meaningfully engage with the governing statute and her misunderstanding of the immunity right at issue. Centerville is not a hospital that "receives federal grant funds under § 254b to offset some of its hospital operational costs." Brief of Appellee Jane Doe (hereinafter "Appellee's Br.") 41. It is a "federally-supported" health center, "occup[ying] a unique place in the health services ecology," *Cmty. Health Care Ass'n of N.Y.*, 770 F.3d 129, 157 (2d Cir. 2014). Because of its unique status, Centerville is also, at the very least, a federal officer or person acting under a federal officer within the meaning of 28 U.S.C. § 1442. *Agyin v. Razmzan*, 986 F.3d 168, 178 (2d Cir. 2021).

1

For its part, the United States—properly an indispensable party, not merely an "amicus"—advances a position that would allow it to foreclose Centerville's statutory right to a federal forum through procedural trickery. Its argument relies on a flawed premise it correctly abandoned decades ago: that the Justice Department can be the final arbiter of its own decisions. *Cf. Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). The federal immunity to which Centerville is entitled furthers its "vital function in delivering healthcare to underserved populations." *Three Lower Cnties. Cmty. Health Servs., Inc. v. Maryland*, 498 F.3d 294, 303 (4th Cir. 2007). To safeguard that function, 42 U.S.C. § 233(*l*)(1) imposes a clear and unequivocal obligation on the Attorney General—to be completed within a set timeframe—to ensure that Centerville's claimed immunity would be adjudicated in federal court. The Attorney General indisputably failed to perform that nondiscretionary duty. Accordingly, Centerville, as the removal statutes permit, removed this case itself.

## ARGUMENT

Centerville properly removed this matter to federal court pursuant to both 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442(a)(1). The district court erred in concluding it lacked jurisdiction to conduct the hearing required by 42 U.S.C. § 233(*l*)(2) to determine the "proper forum and procedure for the assertion" of Plaintiff's claim. 42 U.S.C. § 233(*l*)(2); *see Estate of Campbell v. S. Jersey Med.*

2

*Ctr.*, 732 Fed. App'x. 113, 116–17 (3d Cir. 2018) (concluding § 233(*l*)(2) "grants a district court jurisdiction to decide whether to remand the case or to substitute the United States as a party and deem the action as one brought under the FTCA"). The district court further erred in determining that Centerville was not entitled to remove this case under 28 U.S.C. § 1442(a)(1). This Court should reverse.

## I.   This Court Has Jurisdiction Over the District Court's Remand Order and Denial of Centerville's Absolute Immunity

There should be no dispute that the Court has jurisdiction over this appeal. *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1538 (2021). It is a matter of settled law that the Court's jurisdiction extends to the entirety of the district court's decision and order, *i.e.*, the merits of all bases for removal to the district court. *Id.* (holding when notice of removal invokes § 1442 as one of multiple grounds for removal, appellate jurisdiction exists to review "each and every [ground for removal]"). Plaintiff's insinuation that Centerville's invocation of 28 U.S.C. § 1442 is "bare or frivolous" ignores decisions of the Second and Ninth Circuits conclusively deciding the jurisdictional issue with which Plaintiff quarrels. *See Friedenberg v. Lane Cnty.*, 68 F.4th 1113, 1131–32 (9th Cir. 2023) ("Because this case [against a deemed health center and its employees] was removed, in part, under § 1442, the district court's remand order is reviewable on appeal."); *Agyin*, 986 F.3d at 178 (concluding "removal under § 1442 was proper because . . . [deemed physician] was acting under a federal officer" when

3

providing services in keeping with his health center employment agreement); *see also Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-4977, 2024 WL 1075359, at *12 (S.D.N.Y. Mar. 12, 2024) (exercising removal jurisdiction under § 1442 and ordering substitution of United States in place of deemed defendant in two cases premised on third-party breaches on patient information); Brief for United States as Amicus Curiae Supporting Appellee (hereinafter "U.S. Br.") at 27 (acknowledging Court's jurisdiction).

## II.    Centerville Properly Removed This Matter To Federal Court Under 42 U.S.C. § 233(*l*)(2)

Centerville properly removed this matter to federal court pursuant to 42 U.S.C. § 233(*l*)(2), which provides deemed defendants the right to a federal forum where the Attorney General fails or refuses to appear and advise the state court as to a defendant's irrevocable deemed status. 42 U.S.C. § 233(*l*)(1), (2). Two things are clear: the statute's imposition of a two-part obligation on the Attorney General, and the Attorney General's failure to fulfill that obligation here. One conclusion follows: 42 U.S.C. § 233(*l*)(2) entitles Centerville to a federal forum in which to advance its absolute immunity defense.

### A.    The Attorney General Failed to Fulfill Its Two-Part, § 233(*l*)(1) Obligation Within the Required Fifteen Day Period

A proper reading of § 233(*l*) cannot accommodate Plaintiff's assertion that "once the Attorney General appeared, only the Attorney General could make the

call to remove the case to federal court." Appellee's Br. at 16. In interpreting the

statutory text at issue, plain language, necessarily informed by context, should

govern. *See, e.g., K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In

ascertaining the plain meaning of the statute, the court must look to the particular

statutory language at issue, as well as the language and design of the statute as a

whole."); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484

U.S. 365, 371 (1988) (noting statutory instruction is a "holistic endeavor").

Sections (*l*)(1) and (*l*)(2), enacted concurrently as statutory siblings, should, in

keeping with overall context, be interpreted in a way that renders them compatible

rather than contradictory. *United States v. Rodgers,* 466 U.S. 475, 480 (1984)

(rejecting "narrow, technical definition" of a statutory term when it "clashes

strongly" with "sweeping" language in the same sentence). Centerville's reading

harmonizes the statute and fulfills its purpose. Plaintiff's interpretation, that "the

thrust of § 233(*l*)'s *dueling provisions* is to protect the hospital from default—a

concern assuaged by the Attorney General's timely appearance," Appellee's Br. at

32, puts the statute "at war with itself." *United States, ex rel. Polansky v. Exec.*

*Health Res., Inc.*, 599 U.S. 419, 434 (2023) (citing *United States v. Am. Tobacco*

*Co.*, 221 U.S. 106, 180 (1911)).[1]

---

[1] Plaintiff's grasping at various canons of construction cannot overcome the natural
reading of 42 U.S.C. § 233(*l*). Appellee's Br. at 26. Canons, at best, "are not

It is illogical to conclude—as Plaintiff and the Government urge—that Congress would, in § 233(*l*)(1), mandate that the Attorney General appear and advise within fifteen days *to effect removal*, then, in the very next statutory subsection, foreclose removal based on the Attorney General's compliance with only the first part of § 233(*l*)(1)'s two-part obligation. Such a reading violates the well-established interpretive principle that "every clause and word of a statute should have meaning." *Id.* at 432 (citing *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)). While Plaintiff acknowledges that § 233(*l*)(1) and (2) are "corollary provision[s]," and that § 233(*l*)(1) requires both appearance and advice, she nonetheless impermissibly reads § 233(*l*)(2) "in a vacuum" to make the advice in § 233(*l*)(1) meaningless. *Tyler v. Cain*, 533 U.S. 656, 662 (2001). Under Plaintiff's reading, the Attorney General need not ever advise as to a defendant's deemed federal status, with no consequence for the Government and no recourse for the deemed defendant. Such an interpretation renders § 233(*l*)(2) removal available only at the Attorney General's whim—a result contradicted by the statute when

---

mandatory rules [but] guides that 'need not be conclusive.'" *Chickasaw Nation v. United States*, 534 U.S. 84, 93 (2001) (citation omitted). At worst, "there are two opposing canons on almost every point." Karl Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed*, 3 Vand. L. Rev. 395, 401 (1950); *Yates v. United States*, 574 U.S. 528, 564 (2015) (Kagan, J., dissenting) ("[W]hen words have a clear definition, and all other contextual clues support that meaning, the canons cannot properly defeat Congress's decision to draft broad legislation.").

6

read as a whole and in light of its purpose. To the extent legislative intent is

considered, it is clear Congress could not have intended to extend absolute

immunity to health center defendants via § 233(a) and (g), provide such defendants

prompt access to a federal forum via § 233(*l*), yet nonetheless render access to

federal court illusory.

There is likewise no merit to Plaintiff's assertion that "in agreement, courts

around the country have uniformly reached the . . . conclusion" she advocates the

Court adopt. Appellee's Br. at 24–25. In support, Plaintiff relies primarily on a

series of cases in which a deemed defendant removed a case to federal court *before*

§ 233(*l*)(2)'s fifteen-day period had elapsed. *Id*. Her reliance is misplaced. The

cited cases are inapplicable here, where Centerville indisputably removed the case

well *after* the expiration of § 233(*l*)(2)'s fifteen-day period. *Compare* JA 19

(demonstrating Centerville removed 21 days after providing notice) *with Allen v.*

*Christenberry*, 327 F.3d 1290, 1293 (11th Cir. 2003) (concluding deemed

defendant's removal was not permitted under § 233(*l*)(2), having occurred five

days after Attorney General was notified);[2] *Sherman ex rel. Sherman v. Sinha*, 843

Fed. App'x 870, 873 (9th Cir. 2021) (finding deemed defendant's removal

---

[2] *Allen* is also readily distinguishable because the defendants, unlike Centerville, were never deemed to be PHS employees under § 233(g) and (h) for purposes of § 233(a). Moreover, at the time *Allen* was decided, HHS was failing to make advance deeming determinations as required by § 233(g). *See El Rio Santa Cruz Neighborhood Health Ctr. v. United States*, 396 F.3d 1265, 1273 (D.C. Cir. 2005).

occurred six days after required notice and concluding removal was "premature" under § 233(*l*)(2));[3] *Babbitt v. Dignity Health*, No. 18-cv-65282018, WL 6040472, at *3 (C.D. Cal. Nov. 10, 2019) (concluding removal was improper, having occurred eleven days after deemed defendant notified HHS); *K.C. v. Cal. Hosp. Med. Ctr.*, No. 18-cv-06619, 2018 WL 5906057, at *3–5 (C.D. Cal. Nov. 13, 2018), *aff'd in part, appeal dismissed in part sub nom. K. C. by & through Dunmore v. Khalifa*, 816 F. App'x 111 (9th Cir. 2020), *vacated in part*, 857 F. App'x 958 (9th Cir. 2021), *and withdrawn and superseded by Babbitt v. Dignity Health*, 2023 WL 1281668 (9th Cir. Jan. 31, 2023) (concluding removal was premature, having occurred prior to any notice to Attorney General).

Plaintiff's reliance on *Young v. Temple University Hospital*, No. 18-cv-2803, 2019 WL 109388, at *3 (E.D. Pa. Jan. 3, 2019) is equally unavailing. There, a third-party, rather than the deemed defendant, sought to remove the action. *Young*, 2019 WL 109388, at *3 (concluding "statute does not bestow [removal] authority upon a third-party—only the United States and the [deemed] employee have the statutory authority to remove pursuant to § 233."). The case, simply inapplicable here, stands, at most, for the proposition that § 233(*l*)(2) provides a right of

---

[3] *Sherman* was decided before *BP*, 141 S. Ct. at 1538, when Ninth Circuit precedent precluded the court's consideration of § 233(*l*)(2) as a basis for removal jurisdiction. *Sherman*, 843 Fed. App'x at 873. *Sherman*'s comment on § 233(*l*)(2), as observed in concurrence, is thus dicta. *Id.* at 874 (Ikuta, J., concurring).

removal to deemed defendants and deemed defendants only. *Id.*

Plaintiff's citation to *Q v. California Hospital Medical Center*, No. 17-cv-7917, 2018 WL 1136568 (C.D. Cal. Mar. 1, 2018), is similarly unpersuasive. There, in an unpublished decision, the Central District of California determined a deemed defendant's removal was improper, having occurred after the Attorney General appeared within fifteen days of notice and advised that the defendant's deemed status did not extend to the conduct at issue. *Q v. Cal. Hosp. Med. Ctr.*, 2018 WL 1136568, at *2 ("Section 233(*l*)(1) does not provide a basis for removal because the Attorney General's designee, the United States Attorney for the Central District of California, filed a notice in state court informing the court that Defendants were not entitled to FTCA coverage.").[4]

In short: there is neither uniformity nor consensus on the proper interpretation of § 233(*l*)(2) where, as here, the Attorney General failed to timely fulfill its two-part obligation but nonetheless seeks to foreclose a deemed defendant's access to a federal forum for the "hearing[] and . . . determination, as to the appropriate forum or procedure for the assertion of [Plaintiff's] claim for damages." § 233(*l*)(2). What is clear, instead, is that the Attorney General's

---

[4] In *Blumberger v. Cal. Hosp. Med. Ctr.*, No. 22-cv-06066, 2022 WL 16698682, at *3 (C.D. Cal. Nov. 2, 2022), *appeal docketed sub nom. Blumberger v. Tilley*, No. 22-56032 (9th Cir.) (submitted Nov. 4, 2023), the Ninth Circuit is poised to decide whether the Attorney General may preclude judicial review by—as here—appearing but not advising within the 15-day period mandated by § 233(*l*)(2).

opposition to immunity is not infrequently proven to be without merit when
scrutinized in federal court. *See, e.g., Friedenberg*, 68 F.4th at 1131–32; *Agyin v.
Razmzan*, 986 F.3d at 171.

**B.    Centerville, Irrevocably Deemed to Be a PHS Employee During the Relevant Period, Is Entitled to a Federal Forum In Which to Adjudicate Its Claim To Immunity**

Centerville, irrevocably deemed to be a PHS employee during the relevant
period, is entitled to a federal forum in which to resolve any dispute as to whether
it was acting within the scope of its deemed PHS employment when the alleged
acts and omissions occurred. If § 233(*l*) is to be given any effect, the Attorney
General's role in the statutory scheme cannot be understood to preclude judicial
review of the Executive's "scarcely disinterested decision." *De Martinez v.*, 515
U.S at 429 (observing such a "strange course becomes all the more surreal when
[as here] one adds to the scene the absence of an obligation on the part of the
Attorney General's delegate to conduct a fair proceeding, indeed, any
proceeding"); *cf. Henderson v. Shinseki*, 562 U.S. 428, 435–46 (2011) (noting
there must be a "clear indication that Congress" intended a "claim-processing" rule
to be jurisdictional) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514–16 (2006),
internal quotation marks omitted).

Rather than confront Centerville's arguments, Plaintiff mischaracterizes
Centerville's position as a "claim that the 'deeming notice' already confers

absolute immunity." Appellee's Br. at 15, 25. That is hardly Centerville's position as to either the statute's meaning or effect. *See* Appellant's Br. at 26–28; *see also Agyin*, 986 F.3d at 184 ("[A PHS employee] is entitled to immunity from suit and to substitution of the United States as the defendant if this suit *concerns actions he took within the scope of his employment as a deemed federal employee*.") (emphasis added).

Plaintiff is likewise mistaken, at best, in asserting the Court would need to "invent two new presumptions" to properly read 42 U.S.C. § 233(*l*). Appellee's Br. at 33. Application of clear precedential authority requires analysis, not invention. And the authority here is pellucid. *See, e.g., De Martinez*, 515 U.S. at 434 (holding Attorney General's certifications subject to judicial review); *see also* Federally Supported Health Centers Assistance Act of 1992, 59 Fed. Reg. 42790-01, 42792 (Attorney General certification as to any "particular claim or case . . . is subject to judicial review"). Consistently, this Court has squarely held "that district courts have jurisdiction to conduct hearings and make determinations under section 233(*l*)(2)"—*i.e.*, to decide whether to substitute the United States in place of the deemed defendant—"even when a non-diverse federal employee defendant has been sued under state law." *Estate of Campbell v. S. Jersey Med. Ctr.*, 732 Fed. App'x. 113, 116–17 (3d Cir. 2018). Had Congress not designed § 233(*l*)(2) to override the well-pleaded complaint rule's presumption against removability—

11

which (apart from diversity) bars removal unless a federal question appears on the face of the complaint—"a defendant's ability to avail himself of a federal forum would be partly dependent on how the plaintiff pled the action, rather than the substance of the plaintiff's claims." *Campbell*, 732 Fed. Appx. at 116 ("[D]enying the district courts jurisdiction to conduct hearings under section 233(*l*)(2) and substitute the United States when appropriate would permit a plaintiff to—in some cases—avoid federal question jurisdiction through 'artful pleading'.") (citing *United Jersey Banks v. Parell*, 783 F.2d 360, 367 (3d Cir. 1986)). "For section 233(*l*)(2) to have *any effect*, a district court must *at least have jurisdiction* to substitute the United States when it is appropriate to do so." *Id*. (emphasis added).

It stands to reason that § 233(*l*)(2)—which expressly mandates removal *and* judicial review to ascertain the availability of a federal defense—should be construed to give full effect to that purpose. 42 U.S.C. § 233(*l*)(2) (mandating action "shall be removed" at request of "any" deemed defendant, without any time limit, and requiring action "shall be stayed" pending a "hearing" and a judicial determination as to whether § 233(a) immunity applies to the particular lawsuit at issue); *De Martinez*, 515 U.S. at 424 ("federal judges traditionally proceed from the 'strong presumption that Congress intends judicial review' of executive branch action) (citations omitted)). Plaintiff's position impermissibly glosses over the district court's "virtually unflagging obligation" to exercise jurisdiction under §

233(*l*)(2). *Cf. Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Cohens v. Virginia*, 19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.").

## III.    Centerville, A Federal Officer Or Person Acting Under A Federal Officer, Properly Removed Under 28 U.S.C. § 1442

Centerville properly removed this matter under 28 U.S.C. § 1442(a)(1), the "main point" of which "is to give officers a federal forum in which to litigate the merits of immunity defenses." *Jefferson County v. Acker*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring in part and dissenting in part). As a community health center deemed to be a Public Health Service employee, Centerville is a federal officer sued for acts taken under color of office within the meaning of § 1442. *See* Appellant's Br. at 34–36. Neither Plaintiff nor the Government offer a persuasive rational against this conclusion.[5]

Moreover, at the very least, Centerville has demonstrated it was acting under a federal officer within the meaning of § 1442: it is a "person" within the statute's meaning; plaintiff's claims are based on Centerville's acting under the United States, its agencies, or its officers; the claims are "for or relating to" acts under

---

[5] Plaintiff's assertion (at 47, n.8) that Centerville waived any argument that the complained of acts and omissions were under color of office is patently false; even a cursory reading of Centerville's opening brief easily overcomes the assertion. *See e.g.,* Appellant's Br. at 40–42.

color of Centerville's federal office; and Centerville has raised a colorable federal defense. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def.'s Ass'n of Phila.* (hereinafter, "*Def.'s Ass'n*"), 790 F.3d 457, 467 (3d Cir. 2015) (citing *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir.1994)); *see also Agyin*, 986 F.3d at 178 (concluding deemed physician defendant "was 'acting under' a federal officer because he performed work that, absent the health center program in which he participated, the government would have had to perform itself; his work assisted the mission of the federal agency that oversaw his work; and he was subject to federal oversight and control").[6]

Plaintiff—insisting Centerville is a "private hospital"—advances a contrary position mired in a misunderstanding of the nature of health centers, the health center program, and the governing statutes.[7] For its part, the Government, as amicus, seeks to distinguish this case not only from recent Circuit court precedent

---

[6] The United States is mistaken in asserting that the Second Circuit's holding in *Agyin* was dicta. U.S. Br. at 27. The case was decided before the Supreme Court's decision in *BP P.L.C. v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532, 1538 (2021).

[7] Plaintiff references—but makes no effort to develop—the district court's unexplained notion that § 233's removal procedures operate as a prerequisite to § 1442 removal, and completely ignores persuasive authority recognizing that these statutes afford separate and alternative bases for removal. *Compare* Appellee's Br. at 37 *with Agyin*, 986 F.3d at 179 (holding deemed PHS defendants have separate and alternative removal rights under 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442). The United States ignores this aspect of the district court's decision altogether.

but also from decades of its own practice.[8] In so arguing, Plaintiff and the

Government misstate the well-established framework for interpreting § 1442. First,

both opposing parties wrongly assert that the Court should view the application of

§ 1442 through a narrow lens. Second, both misstate Centerville's relationship with

the federal government. Finally, Plaintiff turns an element of the "acting under"

analysis on its head, erroneously insisting that Centerville must demonstrate that

the complained-of conduct was undertaken at the Government's behest. None of

the arguments made against Centerville's status as a federal officer or person

acting under a federal officer are supported by governing law.

### A.   "Acting Under" Must Be Liberally Construed In Favor Of Removal

Plaintiff and the Government urge the Court to endorse a "narrow" reading §

1442. Appellee's Br. at 38; U.S. Br. at 17. This through-the-looking-glass version

of § 1442 must be rejected. It is axiomatic that § 1442—as a federal officer

removal statute—is written in broad language that must be liberally construed. *See*

*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007) ("[T]his Court

has made clear that the statute must be 'liberally construed'" (quoting *Colorado v.*

---

[8] The Government brushes off its prior inconsistent position, adopted time and
again in courts nationwide, as mere "mistakes by government attorneys." U.S. Br.
at 26 n.4. The attempt to distance itself from a proper application of the statute is
unconvincing. *See Agyin*, 986 F.3d at 179 (recognizing "the government itself has
invoked § 1442 on behalf of deemed employees" to effectuate removal and that it
"did not err in doing so") (collecting cases).

*Symes*, 286 U.S. 510, 517 (1932)); *see also Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *accord Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("[T]his Court has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'"); *Agyin*, 986 F.3d at 175 ("[B]oth § 1442 and especially its 'acting under' provision must be read broadly.").

The Government's conflation of sovereign immunity with the immunity afforded to PHS defendants—and their deemed counterparts—is without merit. Of course, it is axiomatic that waivers of sovereign immunity—such as the Federal Tort Claims Act ("FTCA")—are to be strictly construed. But § 233(a) is neither a provision of the FTCA, nor a waiver of sovereign immunity. It is, instead, a grant of absolute immunity, which confers an individual federal right to be free from the burdens of litigation altogether, regardless of the scope of the exclusive remedy (here, the FTCA). *See Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (noting 42 U.S.C. § 233(a) entitled PHS employees to "absolute immunity . . . for actions arising out of the performance of medical or related functions within the scope of their employment"); *accord Agyin*, 986 F.3d at 172; *see also Friedenberg*, 68 F.4th at 1126 (holding "[a] plain reading of the statute" supports the conclusion that "deemed PHS employees receive protection 'to the same extent' as actual PHS

16

employees").

The two concepts—sovereign immunity and individual immunity—are not only logically and legally distinct, but the former (which applies to a limited remedy under the FTCA) does not restrict the latter (which applies to any action arising out of the performance of "medical … and related functions"). 42 U.S.C. § 233(a); *Hui*, 559 U.S. at 807 (recognizing scope of FTCA's waiver of sovereign immunity is not coextensive with scope of 233(a)'s grant of immunity, citing *United States v. Stanley*, 483 U.S. 669, 684 (1987) for the proposition that "the availability" of a remedy "is a question logically distinct" from the nature and scope of an individual's immunity). The Government's argument that § 233 should be narrowly construed because it represents a waiver of sovereign immunity is "incorrect," as the "scope of the FTCA—and the scope of the United States' waiver—is a separate question which § 233 says nothing about." *Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-4977, 2024 WL 1075359, at *7 (S.D.N.Y. Mar. 12, 2024). Indeed, in contrast to the narrow nature of sovereign immunity, the PHS Act employs broad and unequivocal terms to provide PHS personnel with absolute immunity from the wide range of claims that can arise out of a health care entity's and/or provider's "performance of medical, surgical, dental, or related functions," by making the remedy under the FTCA (*i.e.*, a claim against the United States) "exclusive of any other civil action or proceeding by reason of the same

subject-matter." § 233(a) (emphasis added). The provision's exclusivity is stated in similarly sweeping language: the remedy afforded is "exclusive of any other civil action or proceeding by reason of the same subject-matter against the [PHS employee] whose act or omission gave rise to the claim." 42 U.S.C. § 233(a) (emphasis added).

### B. Centerville's Fulfillment of its Federal Grant Project Involves an Effort to Assist or Help Carry Out the Duties or Tasks of the Federal Superior

Centerville's fulfillment of its federally-funded health center grant project involves an effort to assist Centerville's federal superior. The Court should reject Plaintiff's and the United State's contrary assertion. Citing *Watson*, Plaintiff accurately frames the applicable test as requiring that "Centerville must be "involve[d] [in] an effort to assist, or to help carry out, the duties or tasks of the federal superior." Appellee's Br. at 40. But Plaintiff goes astray in analogizing Centerville's activities to those of the defendants in *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021) and *Mohr v. Trustees of Univ. of Pennsylvania*, 93 F.4th 100 (3d Cir. 2024). Both cases simply illustrate the truism that "[m]erely complying with federal laws and regulations is not 'acting under' a federal officer for purposes of federal-officer removal." *Maglioli*, 16 F.4th at 405 (citing Watson, 552 U.S. at 153); *accord Mohr*, 93 F.4th at 105. Neither case should dictate the outcome here.

18

In *Maglioli*, this Court observed that "Government contractors are a classic example" of entities acting under a federal officer when "help[ing] the Government to produce an item that it needs." *Maglioli*, 16 F.4th at 405. There, private nursing home defendants asserted they were acting under a federal officer by complying with certain provisions of the Public Readiness and Emergency Preparedness ("PREP") Act, 42 U.S.C. §§ 247d-6d, 247d-6e. *Id.* at 404–06. The Court, observing the nursing homes were "not government contractors" and lacked "the close relationship with the federal government that we recognized in the nonprofit community defenders," concluded the nursing homes "do not assist or help carry out the duties of a federal superior." *Id.* at 405.  In other words, the private nursing homes, unlike Centerville, were not furthering a government endeavor pursuant to a comprehensive statutory and regulatory scheme indicative of the requisite special relationship. Indeed, this Court observed that, at most, the *Maglioli* defendants were subject to mere "guidance, not control." *Id.*

In *Mohr*, the defendant University medical center, a Medicare Program enrollee able to submit claims thereto for patient services, argued it was acting under a federal officer in complying (or failing to comply) with regulations promulgated under the Health Information Technology for Economic and Clinical Health ("HITECH") Act., Pub. L. No. 111–5, § 13001–13424, 123 Stat. 115, 226–79 (2009). *Mohr*, 93 F.4th at 103. The University's asserted hook to "acting under"

19

a federal officer was its receipt of certain financial incentives for "provid[ing] patients . . . with timely electronic access to their health information" under relevant incentivizing regulations. *Id.* This Court, "look[ing] to the nature of the relationship between the private party and the federal government," rejected the University's argument, observing that "simply because a private party has a contractual relationship with the federal government does not mean that it is acting under that federal authority," and concluding the defendant was "not producing or operating [its] patient portal for the government." *Id*. at 106.

As explicated in Centerville's opening brief, Centerville, as a federally-funded health center, operates in accordance with the specific strictures of 42 U.S.C. § 254b and has been delegated absolute federal immunity for its activities. But Centerville's activities constitute more than mere compliance with federal laws and regulations. The legal regime through which the Government directs nearly every aspect of Centerville's structure and daily operations reflects an "unusually close" relationship in which Centerville is "acting under" a federal officer to further a significant government objective. *Watson*, 551 U.S. at 153.

Health centers—much like the federally-funded entities in *Defenders Association*—and unlike the nursing home defendants in *Maglioli* and University defendant in *Mohr*—are creatures of statute, created to further the "national objective" of ensuring that "[n]o community . . . be deprived of [high quality

health] services because of inadequate financial resources, its location, or similar factors." S. Rep. No. 94-29, at 119–20 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 469, 581–82. By the mid-1970s, the program had developed such a demonstrated record of success in providing basic health services to—and improving the health status of—low-income and medically needy communities that the Congress enacted legislation permanently authorizing federal assistance to qualifying community health centers. *See* Special Health Revenue Sharing Act of 1975, Pub. L. No. 94-63, § 501, 89 Stat. 304, 342 (1975). In keeping with Congress's identified "national objective," the level of federal involvement in the administration and day-to-day operations of health centers is well beyond that in other federal grant programs. Health centers, for example, face restrictions on the expenditure of virtually all of their funds, including "nongrant" money obtained independently from the Section 330 program. 42 U.S.C. § 254b(e)(5)(D) (restricting health centers' use of "nongrant" funds to only those uses that "further[] the objectives of the project").

In addition to statutory requirements directing health center's day-to-day operations, applicable regulations subject health centers to a high-degree of detailed federal oversight and control further reflecting the "close relationship with the federal government that [this Court] recognized in the nonprofit community defenders." *Maglioli*, 16 F.4th at 405 (citing *Def.'s Ass'n*, 790 F.3d at 469). The

regulations, at 2 C.F.R. Part 51c and 45 C.F.R. Part 75, address, respectively and in considerable detail, health center program operations and costs that may be charged to the grant.

Finally, as the Second Circuit correctly held in *Agyin*, a deemed PHS employee's "ability to remove his case is stronger than that of, for example, a private company acting under a contract with the government." *Agyin*, 986 F.3d at 178 (observing "[u]nlike a contractor, the government actually treated [the deemed defendant] as the equivalent of a government employee for the purposes of immunity under § 233"). Centerville's activities as a federal grantee are akin to— albeit much more closely directed and supervised—the work of a government contractor, which this Court has observed to be the "classic example of private parties acting under the federal government." *Mohr*, 93 F.4th at 105; *see also Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (observing statutory language of a grant program is "much in the nature of a contract" between government and grantee). Under the federal Grants and Cooperative Agreements Act of 1977, 31 U.S.C. § 6301–08, the Government is directed to use a grant when the principal purpose of the relationship is to transfer a thing of value to a recipient "to carry out a public purpose of support or stimulation authorized by a law." 31 U.S.C. § 6304. In contrast, the Act directs that a procurement contract (such as those discussed in *Maglioli* and *Watson*) be employed when "the principal

purpose of the instrument is to acquire (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government." 31 U.S.C. § 6303. The Act's distinction between funding instruments underscores the Second Circuit's holding in *Agyin*—that the "unusually close" relationship required by *Watson* is more easily found in the context of a grant than a procurement contract.[9]

### C.    Centerville Need Only Show That Plaintiff's Allegations Are Directed At Its Relationship With The Government

To establish it was acting under a federal officer, Centerville need not demonstrate that the Plaintiff's complained-of conduct was itself undertaken at the Government's behest. Instead, it is sufficient that the allegations are directed at the relationship between Centerville and the federal government. *Def.'s Ass'n*, 790 F.3d at 470; *accord Mohr*, 93 F.4th 100 at 105. Plaintiffs repeatedly turn this standard on its head, insisting Centerville was not acting under a federal officer because HHS advised against the very practice at the core of Plaintiff's claims. Appellee's Br. at 17, 44–46. The argument is meritless.

Centerville's efforts to safeguard patient privacy fulfill a core health center function; they are thus at the heart of Centerville's relationship with the federal

---

[9] Indeed, HHS even identifies responsible federal assigned responsible for overseeing grants compliance. HHS, *Grants Policy Statement*, at p. I-5 (Jan. 2007), https://www.hhs.gov/sites/default/files/grants/grants/policies-regulations/hhsgps107.pdf (identifying Grants Management Officer, Grants Management Special, and Project Officer/Program Official).

government for purposes of the "acting under" analysis. In two similar data-breach class actions against a deemed health center, the District Court for the Southern District of New York rejected this very contention. *See Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-5039, 2023 WL 2662811, at *10 (S.D.N.Y. March 28, 2023).[10] In so doing, *Krandle* expressly distinguished the case on which Plaintiff relies, *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 786 Fed. App'x 604, 606 (2d Cir. 2014), because the deemed health centers, as a condition of their federal funding and deemed status, are statutorily required to have, among other things, "an ongoing quality improvement system that includes clinical services and management, and that *maintains the confidentiality of patient records.*" *Id.* at *11 (citing 42 U.S.C. § 254(b)(3)(C)) (emphasis in original); *see also Krandle v. Refuah Health Center, Inc.*, No. 22-cv-4977, 2024 WL 1075359 (S.D.N.Y. Mar. 12, 2024); *Doe v. Neighborhood Healthcare*, No. 21-CV-1587, 2022 WL 17663520, at *8 (S.D. Cal. Sept. 8, 2022) (concluding deemed defendants were immune under § 233(a) from a claim premised on an "alleged data breach"); *but see Ford v. Sandhills Medical Foundation, Inc.*, No. 22-2268, 2024 WL 1335202 (4th Cir. Mar. 29, 2024); *Marshall v. Lamoille Health Partners, Inc.*, No. 22-cv-166, 2023 WL 2931823 (D. Vt. Apr. 13, 2023); *Hale v. ARcare, Inc.*, No. 22-cv-

---

[10] As noted in its Opening Brief, Centerville disagrees with *Krandle*'s analysis of 42 U.S.C. § 233(*l*)(2).

00117, 2024 WL 1016361 (E.D. Ark. Mar. 8, 2024).

## CONCLUSION

For the foregoing reasons, and those previously stated, the judgment of the district court should be reversed.

Dated: April 5, 2024          Respectfully submitted,

FELDESMAN LEIFER LLP

*/s/ Matthew S. Freedus*
Matthew Sidney Freedus
Rosie Dawn Griffin
Khatereh S. Ghiladi
1129 20th Street, NW, Suite 400
Washington, DC 20036
202.466.8960
mfreedus@feldesman.com
rgriffin@feldesman.com
kghiladi@feldesman.com

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

1.      I hereby certify that this reply was prepared in Microsoft Word with 14-point Times New Roman, a proportionally spaced typeface. The brief contains a total of 6002 words, as calculated by my word processing software, excluding the statements and other materials specified in Federal Rule of Appellate Procedure 32(f).

2.      In accordance with Third Circuit Local Appellate Rule 31.1(c), Appellants Centerville Clinics, Inc. Brief, as electronically filed on April 5, 2024, was scanned with a virus detection program, namely Trend Micro, and no virus was detected.

3.      In accordance with Third Circuit Local Appellate Rule 31.1(c), the text of Appellants Centerville Clinics, Inc. Brief, is identical to the text of the Brief to be submitted in paper copy.

*s/Matthew S. Freedus*
Matthew S. Freedus

## CERTIFICATE OF BAR ADMISSION

Pursuant to Local Appellate Rule 28.3(d), I hereby certify that my name appears on the Brief and I am a member of the bar of this Court. My co-counsel Rosie Dawn Griffin and Khatereh S. Ghiladi, whose names also appears on this Brief, are likewise members of the bar of this Court.

*s/ Matthew S. Freedus*
Matthew S. Freedus

**CERTIFICATE OF SERVICE**

On April 5, 2024, a true and accurate copy of the foregoing Brief was filed

using the CM/ECF system, which will electronically serve all counsel of record.

_s/ Matthew S. Freedus_
Matthew S. Freedus